IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MOUNTAIN HOME FLIGHT SERVICE, INC.                                    PLAINTIFF

v.                                    Case No. 3:12-CV-03027

BAXTER COUNTY, ARKANSAS;
BAXTER COUNTY AIRPORT COMMISSION;
MCMANN AVIATION FUELING, LLC;
FLY ARKANSAS, LLC; CHARLES HOOPER;
IRA DOUG CHATMAN; TAYLOR SCOTT; and
DAN HALL                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Baxter County, Arkansas, Baxter County Airport Commission, Charles Hooper, and Dan Hall's (collectively, "the Baxter County Defendants") Motion to Dismiss (Doc. 9) and Brief in Support (Doc. 10); Plaintiff Mountain Home Flight Service, Inc.'s Response in Opposition (Doc. 17) and Brief (Doc. 18); Defendants Fly Arkansas, LLC and Taylor Scott's (collectively, "the Fly Arkansas Defendants") Motion to Dismiss (Doc. 15) and Brief in Support (Doc. 16); and Plaintiff's Response in Opposition (Doc. 20) and Brief (Doc. 21).

The Baxter County Defendants' Motion to Dismiss (Doc. 9) alleges that Plaintiff's claims are time-barred, or in the alternative, barred due to principles of *res judicata* and collateral estoppel. The Fly Arkansas Defendants assert essentially the same arguments in their Motion to Dismiss (Doc. 15).[1]

For the reasons described below, the Court finds that both pending Motions to Dismiss

---

[1]     The Fly Arkansas Defendants additionally allege that they were not properly served in this matter. (Doc. 16, p. 3).  However, Plaintiff demonstrated by Affidavit filed on April 17, 2012 (Doc. 19) that proper service was effected on separate Defendant Taylor Scott, who is also the registered agent of separate Defendant Fly Arkansas, LLC, and is thus authorized to receive service of process. Therefore, this particular basis for dismissal of the lawsuit against the Fly Arkansas Defendants is moot.

(Docs. 9 and Doc. 15) should be GRANTED.  The effect of the ruling by the Court on these matters

is that Counts I - XVII of the Complaint, with respect to all Defendants, shall be DISMISSED WITH

PREJUDICE, and Counts XVIII - XIX shall be DISMISSED WITHOUT PREJUDICE.

## I.  Background

Many of the background facts stated by Plaintiff in its Complaint (Doc. 1) happened so long

ago that they do not merit discussion here.  Plaintiff has filed a 59-page Complaint containing an

exhaustive timeline of events beginning as far back as 1987, continuing through the 1990s, and

finally reaching the present day.  Suffice it to say that sometime prior to the allegations asserted in

the Complaint, Defendant Baxter County, Arkansas, created an airport facility and delegated

operation and ownership of the airport to Defendant Baxter County Airport Commission ("the

Commission"), a political subdivision of Baxter County.  On October 29, 1987, the Commission

leased a parcel of real property at the airport to two men, Doyle Linck and Hugh McClain, and

agreed that Linck and McClain would build a hangar on the property and provide airplane fuel,

airplane maintenance, and flight instruction to the public.

On February 11, 1992, Mountain Home Flight Service, Inc., the Plaintiff in this action,

entered into a lease with the Commission in order to charter flights, provide flight instruction, rent

airplanes to the public, and sell airplane fuel at the Baxter County airport.  On June 11, 1996, Baxter

County consented to transferring the lease held by Linck and McClain to Plaintiff.  At various times

thereafter, the lease agreements between Plaintiff and the Commission were renewed and amended

to reset the term of the lease.

In around 2001, more than 10 years before the Complaint was filed, the Commission first

considered plans to sell aircraft fuel to the public in competition with Plaintiff's operation.

Sometime later, in 2003, the Commission and Plaintiff entered into negotiations to allow Plaintiff to sell its operations and extricate itself from its lease obligations; however, these negotiations ultimately failed.   In the intervening years, local politicking, miscommunications, heated negotiations, and bad blood created further conflict among the parties.  Plaintiff became adverse to the Commission and a few members of the local county government, and state court litigation ensued, of which this Court has few relevant details.

The Complaint does not allege that Plaintiff was ever kicked off the airport property, denied the right to pursue its business ventures, or terminated from any lease agreement, although Plaintiff's attempts to sell its business at various times were met with opposition, such that Plaintiff was never able to garner the price it desired in order to sell. And Plaintiff was apparently besieged over the years with threats by county officials to terminate Plaintiff's leases, though such threats never materialized in an actual termination of any lease agreement.

In 2006, the Commission entered into an agreement with Defendant Chatman, whose business was MacMann Aviation Fueling, LLC, to provide fuel to the public in competition with Plaintiff.  Later, in 2007, Defendant Scott, through his business Fly Arkansas, LLC, rented an office from Plaintiff and conducted business as a pilot for hire.  Fly Arkansas eventually, in 2010, entered into a lease with the Commission to rent the terminal building at the airport, and at that time Fly Arkansas mailed postcards to Plaintiff's customers, offering to sell them fuel at a lower price.

Plaintiff maintains that the acts of all of the Defendants, as described in the Complaint, were motivated by the improper purposes of trying to take over Plaintiff's business, or, in the alternative, force it out of business.  Plaintiff further contends that as a result of Defendants' purportedly wrongful acts, including breach of contract, tortious interference with contract and with business

expectancy, conspiracy to commit breach of contract and tortious interference, federal and state-based claims for denial of due process, and state claims for illegal exaction and violations of the Arkansas Open Meetings Act, Plaintiff suffered damages in excess of $500,000.00.

## II.  Legal Standard

In ruling on a motion to dismiss, the Court accepts as true all of the factual allegations contained in a complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). All reasonable inferences from the complaint must be drawn in favor of the non-moving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). Complaints should be liberally construed in the plaintiff's favor and "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rucci v. City of Pacific*, 327 F.3d 651, 652 (8th Cir. 2003)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Defendants have asserted that this case should be dismissed due to the statute of limitations periods having run on the various claims asserted. "[W]hen it appears from the face of the complaint itself that the limitation period has run, a limitations defense may be properly asserted through a 12(b)(6) motion to dismiss." *Wycoff v. Menke*, 773 F.2d 983, 984-985 (8th Cir. 1985) (internal quotation omitted).  Under Arkansas law, the statute of limitations for breach of contract is five years.  Ark. Code Ann. § 16-56-111. The statute of limitations for all tort actions not otherwise limited by law is three years.  Ark. Code Ann. § 16-56-105; *Randles v. Cole*, 68 Ark. App. 7, 9 (Ark. Ct. App. 1999).  Civil conspiracy is not a separate tort but borrows its limitations period from the underlying cause of action.  *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004).

Accordingly, civil conspiracy to commit breach of contract would carry with it a five-year limitations period, while civil conspiracy to commit tortious interference with business expectancy would carry with it a three-year limitations period.  With respect to federal due process claims pursuant to 42 U.S.C. § 1983, "Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983 – a void which is commonplace  in federal statutory law."  *Bd. of Regents v. Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).  When no federal statute of limitations is found, it is proper for a court to "borrow" the state law of limitations governing the most analogous cause of action.  *Id.*

## III.  Discussion

### A.  *Res Judicata* and Collateral Estoppel

The Baxter County and Fly Arkansas Defendants assert in their Motions to Dismiss that Plaintiff's claims in this lawsuit have been brought and dismissed in state court, and therefore, principles of *res judicata* and/or collateral estoppel should bar the repeat litigation of these claims in this forum.  As support for these arguments, the Baxter County Defendants have attached copies of the orders of dismissal in three separate lawsuits previously brought in the Circuit Court of Baxter County, Arkansas, involving Plaintiff and many of the Defendants to the instant action.  *See* Docs. 10-1, 10-2, and 10-3.  The Court has reviewed these attached orders of dismissal and has considered them in the context of Defendants' Motions to Dismiss.[2]

---

[2]        Contrary to Plaintiff's suggestion, the Court is "not precluded in [its] review of the complaint from taking notice of items in the public record" without converting a motion to dismiss to a motion for summary judgment.  *Papasan v. Allain*, 478 U.S. 265, 269 n. 1 (1986); *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss").

### 1. *Res Judicata*

*Res judicata*, or "claim preclusion," is a doctrine that prohibits the same parties or those in privity from re-litigating a cause of action. There is a three-part test to determine when *res judicata* will bar re-litigation of a claim: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). As here we have not one, but three separate Baxter County state court lawsuits that were previously litigated, the Court has examined all three to determine whether any of them satisfy the *Lane* test and bar re-litigation of any of the claims asserted in the instant action.

The Court concludes that *res judicata* principles do not apply here. The first Baxter County Circuit Court case, Doc. 10-1, does not involve all of the same parties to the instant action, nor were the merits of the case determined by the Circuit Court prior to dismissal. Indeed, the dismissal order reflects that the parties *jointly agreed* to dismiss the case. The second Baxter County Circuit Court case, Doc. 10-2, similarly does not involve all of the same Defendants as are parties to the instant dispute. Further, the Court cannot determine what causes of action were asserted in that case merely by examining the attached order of dismissal. Finally, the third Baxter County Circuit Court case, Doc. 10-3, does not involve all of the same Defendants to the instant action, nor does the two-page order reveal which causes of action were asserted by the Plaintiff and considered by the Circuit Court prior to dismissal.

As a case may only be dismissed on principles of *res judicata* when a prior suit was decided involving the same cause of action and the same parties, this doctrine does not constitute grounds for dismissal of the instant dispute.

### 2.  Collateral Estoppel

Collateral estoppel, or "issue preclusion," bars the re-litigation of factual issues that have already been resolved in a prior litigation.  For collateral estoppel to apply, the following four elements must be met: 1) the issue sought to be precluded must be the same as that involved in the prior litigation; 2) that issue must have been actually litigated; 3) the issue must have been determined by a valid and final judgment; and 4) the determination must have been essential to the judgment. *Crockett & Brown, P.A. v. Wilson*, 314 Ark. 578, 581 (Ark. 1993).  Unlike *res judicata*, collateral estoppel does not require mutuality of the parties before the doctrine is applicable.  *Fisher v. Jones*, 311 Ark. 450, 456 (Ark. 1993); 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4464 (2d ed. 2012).

As discussed *supra*, the first Circuit Court order attached as an exhibit to the Baxter County Defendants' Motion to Dismiss (Doc. 10-1), was dismissed upon joint motion of the parties and therefore was not actually litigated to final judgment.  The other two state court orders considered by the Court (Docs. 10-2 and 10-3) do not contain sufficient information to enable the Court to determine which issues were actually litigated in those cases.  Therefore, considering the evidence before the Court, collateral estoppel does not apply to bar Plaintiff's claims.

### B.       Count I:  Breach of Contract

Plaintiff purports to state a claim for breach of contract against separate Defendants Baxter County and the Commission.   Even accepting as true all of the factual allegations made in Count I of the Complaint, the Court finds, *sua sponte*, that this Count should be dismissed for failure to state a claim.  ". . . [A] district court *sua sponte* may dismiss a complaint under Rule 12 (b)(6) as long as the dismissal does not precede service of process." *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th

Cir. 1991).  Here, all parties have been served and made their appearances in this case, so *sua sponte*

dismissal is within the Court's discretion.

In examining Plaintiff's claim for breach of contract, Plaintiff fails to allege that any

provision in any of the lease agreements or other contracts at issue was breached due to Baxter

County or the Commission's acts or omissions.  Instead, Plaintiff contends that these two Defendants

"breached those agreements by breaching their obligation to perform those agreements in good

faith." (Doc. 1, para. 116).  Plaintiff then recites several "instances of bad faith" committed by these

Defendants and alleges that Plaintiff was damaged as a result of these "actions in bad faith."  (Docs.

1 and 1-1, paras. 116-117).

The Supreme Court of Arkansas has held that there is no independent contract claim for

breach of the duty of good faith and fair dealing.  *Arkansas Research Medical Testing, LLC et al.*

*v. Osborne*, 2011 Ark. 158 (Ark. 2011) ("We simply see no reason to now recognize a separate

contract claim for breach of the duty of good faith and fair dealing.  Therefore, a breach of the

implied covenant of good faith and fair dealing remains nothing more than evidence of a possible

breach of a contract between parties").  As Plaintiff fails to allege a specific basis for its breach of

contract claim apart from Defendants' general failure to perform in good faith, Plaintiff has failed

to state a valid claim for breach of contract, and Count I of the Complaint must be DISMISSED

WITH PREJUDICE.

**C.      Counts II - XIII:  Tort Claims for Intentional Interference with Contract or Business
         Expectancy and Conspiracy to Commit Tortious Interference**

It is the Court's determination that all factual allegations comprising Counts II - XIII, which

are tort claims for interference with contract or business expectancy and conspiracy to commit

tortious interference, are barred by Arkansas' three-year statute of limitations on torts, codified at

Ark. Code Ann. § 16-56-105.  Plaintiffs have not alleged any facts that the Court might construe as

tolling the applicable statute of limitations.  "The limitations period begins to run, in the absence of

concealment of the wrong, when the wrong occurs, not when it is discovered." *Gibson v. Herring*,

63 Ark. App. 155, 157-58 (Ark. Ct. App. 1998).   Furthermore, Arkansas law does not recognize a

so-called "continuing tort" theory, whereby a new statute of limitations period commences with each

successive injury.  *Quality Optical of Jonesboro, Inc. v. Trusty Optical, LLC*, 365 Ark. 106, 110

(Ark. 2006) (citing *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895 (Ark. 1996)).  Instead,

in a cause of action for tortious interference with contract or business expectancy, a claim would

accrue when improper conduct either "induce[d] or otherwise cause[d] a third person not to perform

a contract," or induced a third party to stop doing business with the plaintiff and/or start doing

business with its competitor.  *Quality Optical*, 365 Ark. at 109.

Plaintiff's Complaint is 59 pages long, with the first 23 pages devoted to a recitation of the

alleged "facts common to all causes of action."  (Doc. 1).  Unfortunately, Plaintiff does not state a

single fact that falls within the three-year limitations period until the very end of the facts section,

beginning on page 22 out of 23.  To put it another way, Plaintiff details 110 paragraphs worth of

facts[3], but it is not until paragraph 107 that a factual allegation is dated after February 24, 2009, the

beginning of the three-year limitations period.

Of the four paragraphs of stated facts that fall within the statute of limitations period, none

of these facts, whether individually or collectively, state a claim for tortious interference or

---

[3]     The last two paragraphs of the facts section of the Complaint, paragraphs 111 and
112, do not state particular facts but reiterate very generally the allegedly improper motives of
Defendants in "all of the Acts...complained of herein" and then assert a claim for damages.

conspiracy to commit tortious interference.  The elements required to state a tortious interference claim are: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.  *Belin v. West*, 315 Ark. 61, 65 (Ark. 1993).  To state a claim, the interference must be both intentional and improper. *Mason v. Wal-Mart Stores, Inc.*, 333 Ark. 3 (Ark. 1998) (finding that business motivation of increasing profit through more economical means of communication is not improper, provided that coercion or anti-competitive behavior is not present).  In analyzing what sorts of behaviors would be considered proper or improper in defining the tort of intentional interference, the Arkansas Supreme Court in *Mason* adopted the Restatement (Second) of Torts § 766 (1979), which provides:

> "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

*Id.* at 13.

To further clarify the boundaries of the tort, the Arkansas Court of Appeals in *Hayes v. Advanced Towing Services, Inc.*, 73 Ark. App. 36, 42 (Ark. Ct. App. 2001), referred to section 767 of the Restatement (Second) of Torts (1979), finding that "[g]enerally speaking, one business can solicit business from a competitor's client; however, there are limits, and this restatement attempts to establish such limits."

Turning to the allegations in the Complaint that fall within the statute of limitations period for this tort, the Court observes that paragraph 107 merely states that a former Quorum Court

member, Defendant Hooper, "attempted to control operations at the airport" by making certain

demands.  This allegation does not, on its face, demonstrate improper interference with Plaintiff's

contracts or business expectation.

Paragraph 108 describes how Defendant Scott stated his intention to "rent the airport terminal

to build up his aircraft parts business" and "use his fuel tanks to fuel only his aircraft."  This, too,

does not state a claim for tortious interference with Plaintiff's business and is by no means improper

behavior.

Paragraph 109 states that the Commission entered into a lease with Defendant Fly Arkansas

for the terminal building at the Airport which "required no capital investment," "violated the

Minimum Standards of the Airport since it shifts the maintenance costs from FLY ARKANSAS to

THE COMMISSION" and set a cap on the rates, terms, and conditions under which other businesses

could be "permitted to operate on the airport."  Again, there are no facts stated within paragraph 109

that show improper conduct with respect to Plaintiff's business and thus state a claim for intentional

interference with contract or business expectancy.  At best, the facts in paragraph 109 reveal that the

Commission entered into a lease with Defendant Fly Arkansas on terms favorable to Defendant Fly

Arkansas.  Nothing in Plaintiff's lease agreements with the Baxter County Defendants prohibits the

Baxter County Defendants from leasing property at the airport to other parties, such as Defendant

Fly Arkansas, nor does any provision in Plaintiff's lease agreements speak to the terms under which

competitors of Plaintiff's may operate with respect to the Commission.  (Docs. 1-2, 1-3, and 1-4).

In other words, there is nothing in any contract that implies that Plaintiff shall have the exclusive

right to operate airplanes, sell fuel to the public, or provide any service in the absence of other

competition.  In fact, the 1987 Lease Agreement (Doc. 1-2, paragraph 11), which was renewed

almost verbatim on September 1, 1992 and again ratified by Plaintiff and the Commission on

December 6, 1994, states the following with regard to the Commission's authority to lease airport

property and facilities to parties other than Plaintiff:

> "It is expressly agreed and understood that the balance of the lands of the airport facility of Baxter County, Arkansas, other than those above-described and hereby leased, may be used, occupied and dealt with by the Commission herein as it shall see fit from time to time; and it is expressly agreed that only the lands hereinabove described by metes and bounds are leased hereby, and that Lessees shall have no right with regard to the balance of the lands at the Baxter County Regional Airport, except the right to use the taxiway above referred to and the runway in accordance with the FAA Rules and Regulations."

Paragraph 110 of the Complaint states that Defendant Scott of Fly Arkansas "caused

postcards to be mailed to all of [Plaintiff's] customers offering to sell them fuel at a lower price."

Taking this fact as true, as the Court is required to do when considering a motion to dismiss, the

behavior complained of here is not improper and thus cannot meet Arkansas' definition of the tort

of intentional interference. Plaintiff does not allege that Defendant Scott stole customer lists or other

proprietary company information from Plaintiff. Neither does Plaintiff allege that Scott slandered

Plaintiff or cast aspersions on Plaintiff's business practices. No anti-competitive behavior is alleged

on the part of Scott. Further, the third required element of a tortious interference claim has not been

met with regard to the factual allegations in this paragraph, as the behavior complained of by

Plaintiff cannot be said to have induced or caused a breach or termination of a valid contractual

relationship or business expectancy held by Plaintiff. *Belin*, 315 Ark. at 65. As stated above,

nothing in Plaintiff's contracts created the expectation that Plaintiff would have no other competitors

at the airport. Competition, without the allegation of unlawful behavior or impropriety associated

with such competition, cannot constitute the basis for a tort action.

Because none of the facts in the Complaint that fall within the three-year statute of limitations period for torts state a claim for tortious interference with contract or business expectancy, these claims at Counts II - XIII must be DISMISSED WITH PREJUDICE.

**D.      Counts XIV - XVII:  Denial of Due Process, 42 U.S.C. § 1983 and A.C.A. § 16-123-105**

Plaintiff asserts as the basis for federal jurisdiction claims for denial of due process and conspiracy to deny due process pursuant to 42 U.S.C. § 1983.  Plaintiff also asserts the identical claims as purported violations of A.C.A. § 16-123-105, which is Arkansas' state law corollary to § 1983.  "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show a deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) (internal quotations omitted).  Section 1983 is "not itself a source of substantive rights," but is "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).

There is no federal statute of limitations on a § 1983 claim for denial of due process; therefore, courts look to state law to determine the limitations period on the asserted claims.  *See* 42 U.S.C. § 1988(a); *Birmingham v. Omaha School Dist.*, 220 F.3d 850, 854 (8th Cir. 2000).  The Court is to look at the face of the complaint to determine when due process claims accrue in order to assess whether the statute of limitations period has run.  *Penn v. Iowa State Board of Regents*, 999 F.2d 305, 307 (8th Cir. 1993).

It appears from the face of the Complaint in the case at bar that Plaintiff's asserted claims pursuant to § 1983 include: (1) a deprivation of Plaintiff's property interest in its investment in and rights to operate under the various leases at issue in this dispute; (2) a deprivation of Plaintiff's liberty interest in being free from aspersions on its business reputation or from interference with its

-13-

business by Defendants; and (3) conspiracy to deprive Plaintiff of such property and liberty interests. (Doc. 1-1, paras. 214-16 and 224).  These claims boil down to (1) breach of contract based on allegations of bad faith; (2) tortious interference with contract and business expectancy; and (3) civil conspiracy to commit tortious interference.

As discussed above, Plaintiff has failed to state a claim for breach of contract based on allegations of bad faith; accordingly, this claim cannot form a valid basis for a due process violation pursuant to either § 1983 or A.C.A. § 16-123-105.  Similarly, Plaintiff's due process claims arising from allegations of tortious interference cannot survive because, as described above, the state statute of limitations on torts is three years, and Plaintiff's tort claims either did not accrue within the limitations period or failed to state a claim.  *See* A.C.A. § 16-56-105.  Therefore, as Plaintiff's underlying tort claims have been dismissed, its due process claims stemming from the same tort allegations must be DISMISSED WITH PREJUDICE.

**E.      Counts XVIII - XIX:  State Claims for Illegal Exaction and Violation of the Open Meetings Act**

Counts XVIII through XIX purport to state claims pursuant to Arkansas law for illegal exaction and for violations of the Arkansas Open Meetings Act.  Although these claims do not appear, on their face, to be time-barred, the Court declines to take jurisdiction over these remaining claims and therefore will not opine here as to whether these claims are meritorious.  Because Defendants are entitled to dismissal of Plaintiff's § 1983 claims, which constitute the basis for this Court's exercise of federal jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims in Counts XVIII - XIX of the Complaint.  The U.S. Supreme Court has observed that "in the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); 28 U.S.C.A. 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . .").

Accordingly, as the federal claims pending against all Defendants in the case at bar are dismissed with prejudice, the Court declines to take supplemental jurisdiction over the two remaining state law claims. These two claims, Counts XVIII and XIX, shall therefore be DISMISSED WITHOUT PREJUDICE.

## IV.  Conclusion

The Court has determined that the Baxter County Defendants' Motion to Dismiss (Doc. 9) and the Fly Arkansas Defendants' Motion to Dismiss (Doc. 15) should be GRANTED and Plaintiff's Complaint dismissed in its entirety.

Count I for breach of contract fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) because the stated basis for the breach of contract is a lack of good faith and fair dealing by Defendants with respect to Plaintiff. As Arkansas does not recognize an independent contract claim for breach of the duty of good faith and fair dealing, and such is the only basis asserted by Plaintiff for the alleged breach of contract, this claim is hereby DISMISSED WITH PREJUDICE.

Counts II - XIII for tortious interference with contract or business expectancy and for conspiracy to commit tortious interference are also DISMISSED WITH PREJUDICE. The three-

year statute of limitations for tort claims bars all but four paragraphs of more than 100 paragraphs of facts stated by Plaintiff in its Complaint.  The four paragraphs in the Complaint that state facts that occurred within the limitations period fail to state a claim for tortious interference pursuant to Arkansas law.

Counts XIV - XVII for denial of due process pursuant to 42 U.S.C. § 1983 and A.C.A. § 16-123-105 are DISMISSED WITH PREJUDICE because these due process claims are rooted in Plaintiff's underlying claims for breach of contract and tortious interference, all of which were dismissed either for failure to state a claim or for accruing outside the relevant statute of limitations period.  Accordingly, as the underlying claims forming the basis for the alleged denial of due process have been dismissed, the due process claims must also be dismissed.

Finally, because Plaintiff's federal claims forming the basis for this Court's jurisdiction have been dismissed with prejudice, Plaintiff's remaining state law claims, Counts XVIII - XIX of the Complaint for illegal exaction and for violations of the Arkansas Open Meetings Act, are DISMISSED WITHOUT PREJUDICE, as the Court declines to take supplemental jurisdiction of these claims and finds that they should more properly be brought in state court.

IT IS SO ORDERED this 19th day of June, 2012.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE